# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK ARRINGTON,** | : | CIVIL ACTION NO. 3:16-cv-0832 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **WARDEN C. MAIORANA,** *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Derek Arrington ("Arrington" or "Plaintiff"), at all times relevant an inmate incarcerated at the United States Penitentiary at Canaan, Waymart, Pennsylvania, commenced this <u>Bivens</u>[1] action on May 10, 2016. (Doc. 1). Arrington names the following defendants: Warden Charles Maiorana ("Maiorana"), Nurse Carey Rhea ("Rhea"), and "URC Medical Staffs."

Presently pending is Defendants Maiorana and Rhea's Motion (Doc. 18) to Dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motions will be granted. Also pending is Arrington's Motion (Doc. 28) for Leave to Re-file Amended Complaint, which will be denied based on the dispositions of the motion to dismiss and for summary judgment. Defendant "URC Medical Staff" will

---

[1] **Error! Main Document Only.**<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Finally, Plaintiff's motion (Doc. 30) for appointment of counsel will be denied.

I. **Motion to Dismiss**

   A. **Standard of Review**

Defendant Maiorana seeks to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster

Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B.     Pertinent Allegations of the Complaint

Arrington alleges that he had surgery in his right knee in 2011, and that upon transfer to USP Canaan, Dr. Mowatt and Defendant Rhea "conducted their medical performance, counseling, evaluation and check-up." (Doc. 1, p. 7, ¶ 11). He sought medical treatment on January 8, 2016, due to severe pain, swelling, and occasional locking in his right knee. (Id. at ¶ 12). He continued to seek medical treatment over the course of the next several months from Defendant Rhea and "URC Medical staffs." (Id. at pp. 7-11, ¶¶ 10-23).

He alleges that Defendant Maiorana as the "warden of USP Canaan is legally responsible for the operation of this Federal Prison and for the welfare of all the inmates." (Doc. 1, p. 5, ¶ 4). He contends that that "[a]cting with sufficient culpability and deliberate indifference the defendants denied, delayed, and disregarded Plaintiff's serious medical needs and excessive risk to his safety and health…[d]enying and to provide a MRI, Operation, and Procedure as requested by Plaintiff and Carey Rhea, PA-C exacerbated his swelling and locking right knee which he has to bear severe pain and unbearable comfort." (Id. at p. 6, ¶ 8). He alleges that he experienced a "long delay" in consideration of his grievances and that Defendant Maiorana denied his grievance and required him to wait for a review by the Regional Medical Director. (Id. at p. 8, ¶ 16; p. 10, ¶¶ 20, 23, p. 13, ¶¶ 31, 32).

**C. Discussion**

A Bivens action is "the federal equivalent of the § 1983 cause of action against state actors." Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir.2001); see also Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (*per curiam*) (noting that "federal courts have typically incorporated § 1983 law into Bivens actions" because "the two actions share the same practicalities of litigation."). Section 1983 offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Accordingly, to establish a claim for relief under Bivens, a plaintiff must demonstrate: (1) that the conduct was committed by a federal actor, and (2) that conduct resulted in the deprivation of a right secured by the Constitution or federal laws of the United States. See Brown, 250 F.3d at 801.

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." Id. In other words, defendants in civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Defendant Maiorana moves to dismiss the complaint based on Arrington's failure to allege that he was personally involved in the alleged denial or delay of his medical

5

care. He argues that he is named in his capacity as a supervisory defendant and due to his role in the grievance process. Plaintiff indicates in his response to Defendant's motion that he named him as a defendant "because he is the chief supervisor here at USP Canaan and was made aware of the denial, delay and suffering caused by subordinate prison officials under him, to include medical personel [sic]." (Doc. 23, p. 12). "Plaintiff was meticulous in contacting the Defendant(s) over and over in regards to the pain he was suffering and the severity of his injury. In each instance, not only did Defendant fail to direct his subordinates after learning of the complaint but at times Plaintiff's requests were met with arrogant indignant responses." (Id.)

As noted *supra*, liability cannot be solely predicated on an individual's supervisory role. Arrington's complaint is devoid of allegations that suggest that Maiorana had personal involvement in the denial or delay of his medical care. Moreover, the Third Circuit, has held that, '[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. . . . Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. . . . [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable under the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (discussing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.

1993)). It is clear that Arrington was under the care of medical providers and physicians during the time period at issue.

He fares no better in attempting to impose liability based on the manner in which Defendant Maiorana handled his grievances. Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Defendant Maiorana's motion to dismiss will be granted.

## II.	Motion for Summary Judgment

### A.	Summary Judgment Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

7

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex,. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.    Statement of Material Facts**

The Federal Bureau of Prisons ("BOP") Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 21, ¶ 3, citing 28 C.F.R. §542.10, *et seq.*; Doc. 23, ¶ 3). An inmate must initially attempt to informally resolve the issue with institutional staff by completing a BP-8 form. (Id. at 4, citing 28 C.F.R. § 542.13(a); Id. at 3). If informal resolution fails an inmate may submit a request *via* a BP-9 form to the Warden within 20 days of the date on which the basis for

9

the request occurred. (Id. at 5, citing 28 C.F.R. § 542.14(a); Id. at 3). An inmate who is dissatisfied with the Warden's response may submit an appeal using a BP-10 form to the Regional Director of the BOP within 20 days of the date the Warden signed the response. (Id. at 6, citing 28 C.F.R. § 542.15(a); Id. at 3). The Regional Director has 30 calendar days to respond to the appeal. (Id. at 8, citing 28 C.F.R. § 542.18; Id. at 3). If the Regional Director denies the appeal, the inmate may then appeal to General Counsel within 30 days of the denial. (Id. at 7, 8, citing 28 C.F.R. § 542.15(a); Id. at 3 ). General Counsel has forty calendar days to respond. (Id. at 8; Id. at 3). If a remedy is rejected for a procedural deficiency, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection. (Id. at 9, citing 28 C.F.R. § 542.17(b); Id. at 3). If the reason for the rejection of an administrative remedy is correctable, the rejection notice must inform the inmate of a reasonable time extension within which to correct the defect and resubmit the request or appeal. (Id. at 10, citing 28 C.F.R. § 542.17(b); Id. at 3). A copy of the remedy is not maintained by the BOP. (Id. at 11, citing 28 C.F.R. § 542.17; Id. at 3).

The BOP maintains computerized records of all administrative appeals filed by inmates on its SENTRY system. (Id. at 12; Id. at 3). A review of Arrington's computerized records indicates that he has filed seventeen administrative remedies during his incarceration. (Id. at 13; Id. at 3). Two of those remedies are relevant to this matter. (Id.; Id.).

1. Remedy No. 814611

On March 6, 2015, Arrington filed with the Warden a Request for Administrative Remedy, Remedy No. 814611-F1, involving a "medical appointment request." (Id. at 15; Id. at 3). The Warden denied the remedy. (Id. at 16; Id. at 3). On April 16, 2016, he appealed the Warden's decision (Remedy No. 814611-R2) to the Regional Office. (Id. at 17; Id.). The Regional Office denied the appeal. (Id. at 18; Id. at 3). Arrington did not pursue an appeal to the Central Office. (Id. at 19; Id. at 3).

2. Remedy No. 853111

On December 17, 2015, Arrington submitted a BP-8, Attempt at Informal Resolution, regarding the "URC team" denying him an MRI for his knee. (Id. at 20; Id. at 3). In response to his information request, Arrington was informed that a request for an MRI had been submitted to the Regional Office on January 20, 2016. (Id. at 21; Id. at 3). On February 25, 2016, Arrington filed with a Request for Administrative Remedy, Remedy No. 853111-F1, stating that he was being denied appropriate medical care for his right knee. (Id. at 22; Id. at 3). The Warden denied the administrative remedy because an MRI of Arrington's right knee was requested on January, 8, 2016, and was currently under review. (Id. at 23; Id. at 3). On March 23, 2016, Arrington appealed to the Regional Office. (Id. at 24; Id. at 3). The Regional Office denied the remedy on April 20, 2016, because he failed to provide evidence to support his claim of inadequate medical care. (Id. at 25; Id. at 3). On May 9, 2016, he filed an appeal with the Central Office. (Id. at 26; Id. at 3). The Central Office rejected the appeal on May 23, 2016,

because Arrington failed to submit the proper number of continuation pages with his request and failed to provide a copy of his institution administrative remedy request (BP-9) form or a copy of the response from the Warden. (Doc. 21, ¶ 27). Arrington contends that the rejection was erroneous in that he correctly filed the remedy with the Central Office. (Doc. 23, ¶¶ 4, 5). He was instructed to resubmit his appeal in proper form within fifteen (15) days of the date of this rejection notice. (Doc. 21, ¶ 28). He did not resubmit the appeal because he believed "the rejection reasons were erroneous and only used to deture [sic] [him] from pursuing his complaint. (Doc. 23, ¶ 8).

### C. Discussion

Defendants seek an entry of summary judgment on the grounds that Arrington failed to fully exhaust his administrative remedies, as required by 42 U.S. C. § 1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326

(2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," *i.e.* the PLRA requires exhaustion of "available" administrative remedies. Id. at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858-59, quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). There are three instances in which administrative remedies are unavailable. "First, as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and

thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002).). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Woodford, 548 U.S. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

The PLRA requires Arrington to pursue administrative relief with regard to his Bivens claims prior to filing suit in federal court. It is clear that Arrington commenced the administrative review process with regard to his claim concerning the medical treatment concerning his knee. It is equally clear that he failed to properly pursue the process to final review.

Arrington does not dispute that he failed to properly exhaust administrative Remedy No. 814611, in that he failed to pursue a final appeal. With regard to administrative remedy No. 853111-F1, on February 25, 2016, Arrington filed this

14

administrative remedy with the Warden indicating that he was being denied appropriate medical care for his right knee. (Doc. 21, ¶ 22; Doc. 23, ¶ 3). The Warden denied the administrative remedy because an MRI of Arrington's right knee was requested on January, 8, 2016, and was currently under review. (Id. at 23; Id. at 3). Arrington appealed to the Regional Office. (Id. at 24; Id. at 3). The Regional Office denied the remedy on April 20, 2016. (Id. at 25; Id. at 3). The Central Office subsequently rejected his appeal because he neglected to submit the proper number of continuation pages with his request, failed to provide a copy of his institution administrative remedy request form, and failed to include a copy of the Warden's response to his administrative remedy request. (Doc. 21, ¶ 27). Arrington contends that the rejection was erroneous in that he correctly filed the remedy with the Central Office. (Doc. 23, ¶¶ 4, 5). He was instructed to resubmit his appeal in proper form within fifteen (15) days of the date of this rejection notice. (Doc. 21, ¶ 28). It is undisputed that Arrington took no further action.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Arrington has failed to meet this burden. He does not dispute that he failed to exhaust administrative Remedy No. 814611. In an effort to excuse compliance with the exhaustion requirement as it pertains to administrative remedy No. 853111-F1, and overcome an entry of summary judgment, Arrington indicates that he declined to resubmit the appeal of this

15

administrative remedy because he believed "the rejection reasons were erroneous" and a ploy to deter him from pursuing his complaint. (Doc. 23, ¶ 8). This conclusory statement is insufficient to establish unavailability of the administrative process, which requires an inmate to demonstrate that prison administrators thwarted him from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Ross, 136 S. Ct. at 1857. The record clearly demonstrates that the failure to exhaust squarely rests on Arrington in that, at his own peril, he declined to cure the deficiencies and resubmit his appeal to the Central Office. As noted *infra*, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Jones, 549 U.S. at 211–212.

Arrington failed to properly exhaust his administrative remedies as required by the BOP and now his claims are procedurally defaulted. See Spruill, 372 F.3d at 232. Accordingly, he is barred from proceeding in federal court. Judgment will be entered in favor of Defendant Rhea.

### III. Motion to Re-file Amended Complaint

The Court recognizes that this *pro se* pleading must be construed liberally in favor of Arrington, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading

is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). A complaint should not be dismissed with prejudice "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). An amendment is considered futile "if the [it] will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988). Arrington is unable to cure the deficiencies brought to light in Defendants' motion to dismiss and for summary judgment. Allowing him to amend his complaint would therefore be futile. His Motion (Doc. 28) for Leave to Re-file his Amended Complaint will be denied.

**IV.     Rule 4(m) Dismissal or "URC medical staff."**

By Order dated July 7, 2017, Arrington was directed to "provide on or before August 1, 2017, additional information with respect to defendant 'URC Medical Staff' for the purpose of service of the complaint. Failure to provide additional information will result in dismissal of this defendant pursuant to Federal Rule of Civil Procedure 4(m)." (Doc. 27). In response to that Order, Arrington filed the above-referenced Motion (Doc. 28) for Leave to Re-file Amended Complaint, which is accompanied by a proposed Amended Complaint (Doc. 27-1) and Brief (Doc. 29). In his brief, Arrington indicates that the proposed Amended Complaint sheds light on the identity of this Defendant. (Doc. 29, ¶ 8). The Court has reviewed the document for the sole purpose of extracting additional information regarding the "URC Medical Staff." The proposed Amended

Complaint is devoid of any additional information that would assist the Court is identifying this defendant. Consequently, "URC Medical Staff" will be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to effect service within ninety days of the filing of the complaint.

## V. Conclusion

Based on the foregoing, Defendants' motion (Doc. 18) to dismiss and for summary judgment will be granted. Plaintiff's motion (Doc. 28) for leave to Re-file Amended Complaint will be denied. Defendant URC Medical Staff will be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff's motion (Doc.30) for appointment of counsel is rendered moot and will be denied.

An appropriate Order will enter.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**Dated:** August 31, 2017